COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-029-CR
 
  
KIRK 
ALAN CANTRELL                                                           APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        Appellant 
Kirk Alan Cantrell appeals his conviction for capital murder.  After a jury 
found Cantrell guilty, the trial court assessed his punishment at life 
imprisonment.  In five points, Cantrell contends that the trial court 
abused its discretion by permitting the State, over defense objections, to 
elicit inadmissible hearsay testimony from two witnesses in violation of the 
confrontation clauses of the United States and Texas Constitutions and by 
refusing to include an instruction on the lesser included offense of aggravated 
kidnapping in its charge to the jury.  We will affirm.
II. Factual 
Background
        On 
July 21, 1996, Cantrell, Daniel Shockley Miller, and Beverly Cropp participated 
in a plan to kill Gina Dykman because Cantrell believed that Gina had been 
looking through his daily planner and gathering information about his illegal 
drug deals in order to "set him up."  The group lured Gina to a 
convenience store in Fort Worth where they abducted her.  After tying Gina 
with duct tape and placing her in the trunk of the car, they took her to a 
cemetery.  Although the plan was for Cantrell to shoot Gina, he 
"froze."  Ultimately, Miller shot Gina twice, causing her death.
III. 
Confrontation Clause Challenges Were Forfeited
        In 
points one through four, Cantrell argues that the trial court abused its 
discretion by permitting the State, over defense objections, to elicit 
inadmissible hearsay testimony from two witnesses in violation of the 
confrontation clauses of the United States Constitution and the Texas 
Constitution.  The State responds that Cantrell's contentions on appeal 
concerning constitutional violations do not comport with his "hearsay" 
objection at trial and have been forfeited.  We agree with the State.
        A 
hearsay objection is not the same as an objection to a violation of 
confrontation rights.  Holland v. State, 802 S.W.2d 696, 700 (Tex. 
Crim. App. 1991); Tatum v. State, No. 2-04-352-CR, 2005 WL 1189359, at *3 
(Tex. App.—Fort Worth May 19, 2005, no pet.); see also Thornton v. State, 
994 S.W.2d 845, 853 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding that an 
objection lodged solely as hearsay objection will not preserve error on other 
grounds).
        Cantrell 
complains about the following testimony from Brandy Davis:
  
Q. Okay.  Now, at some point that day did [Daniel Miller] tell you that he 
intended to go someplace to do something?
 
A. 
Later that evening he had to go run an errand.
 
Q. 
Did he tell you what that errand was?
 
A. 
To meet some girl down the street.
 
Q. 
Okay.  And did he say something about that girl, why he had to go meet her?
 
[DEFENSE 
ATTORNEY]: Your Honor, we object to any hearsay 
from Mr. Miller.
 
THE 
COURT: Yes.  I don't think he got to that point.
  
[DEFENSE 
ATTORNEY]: Well --
  
THE 
COURT: I'll overrule that objection.  He just asked --
 
[DEFENSE 
ATTORNEY]: He is just asking whether they had a conversation.  If he goes 
into substance we do.
 
THE 
COURT: Right.
 
[PROSECUTOR]: 
First, did you have a conversation?
 
A. 
I'm sorry?
 
Q. 
First, did you have a conversation with Daniel Miller about where he intended to 
go that evening?
 
A. 
Yes, sir.
 
Q. 
Okay.  Now, before you answer, give him a chance to object.  Tell the 
members of the jury what Daniel Miller said he was -- where he was going to go 
and who he was going to meet.
 
[DEFENSE 
ATTORNEY]: That is my cue, Your Honor.
 
THE 
COURT: All right.  Now object.
 
[DEFENSE 
ATTORNEY]: Hearsay.
 
THE 
COURT: Mr. Levy.
 
[PROSECUTOR]: 
We say it's a declaration against interest.
 
[DEFENSE 
ATTORNEY]: It's not a declaration against my client's.  It may be a 
declaration against Mr. Miller's interest.
 
[PROSECUTOR]: 
Right.
 
[DEFENSE 
ATTORNEY]: We shouldn't have to bear the brunt of what is -- what is against his 
interest, Your Honor.  It's not as to our client.  It's an exception 
as to Mr. Miller.
 
THE 
COURT: All right.  I'm going to overrule it.
 
[DEFENSE 
ATTORNEY]: Okay. May we have -- may we have a running objection to each and 
every question that elicit[s] a hearsay response in the context of this 
particular conversation and we have further objections thereafter?
 
THE 
COURT: Yes, you may.
 
[DEFENSE 
ATTORNEY]: Thank you.
 
[PROSECUTOR]: 
Okay.  Now, as to this, I don't want to talk about any other things Daniel 
Miller told you, just one thing.  Did Daniel Miller tell you something 
about who he was going to meet?
 
A. 
Yes, sir.
 
Q. 
What did he tell you?
 
A. 
He said if Kirk calls, tell him that I went to go take care of what we had 
talked about.
 
Q. 
If Kirk calls, tell him I went to go take care of what we talked about?
 
A. 
Yes, sir. [Emphasis added.]
  
Cantrell 
also complains about the following testimony from Michael Jeffreys:
   
Q. In July of 1996, I want to direct your attention to a couple of days before, 
or -- or the day or so before July the 21st.  Did you have a conversation 
with Mr. Miller about something that he needed done?
 
A. 
Yes.
 
Q. 
Or something that he wanted to do?
 
A. 
Something that -- something that had to be done.
 
Q. 
Okay.  Something that had to be done?
 
A. 
Yes.
 
Q. 
And did he tell you what it is that had to be done?  And wait until -- see 
if there is a response.
 
A. 
Yes.
 
[DEFENSE 
ATTORNEY]: I don’t care as long as we don’t go into the substance.  Yes 
is okay.
 
[PROSECUTOR]: 
Well the next question -- you may as well keep standing.
 
[DEFENSE 
ATTORNEY]: I am.
 
[PROSECUTOR]: 
All right.  What is it that Mr. Miller said he had to do?
 
[DEFENSE 
ATTORNEY]: Objection, Your Honor.  Hearsay, 
no showing that our client was present at that conversation.  He shouldn't 
be burdened with whatever kind of admission against penal interest Mr. Miller 
undoubtedly made on that occasion.
 
We 
object to it, not an exception under the hearsay 
rule.
 
THE 
COURT: All right.  Overrule that objection.
 
[DEFENSE 
ATTORNEY]: Please not our exception and may we have a running objection?
 
THE 
COURT: Yes, you may.
 
[DEFENSE 
ATTORNEY]: Thank you.
 
THE 
COURT: You can answer.
 
THE 
WITNESS: Okay.  What was it that he said had to be done?
 
[PROSECUTOR]: 
Yes.
 
A. 
I was told someone had to be gotten rid of and dealt with, and you know, by 
means of getting rid of them.
 
Q. 
So Daniel Miller said they had to get rid of someone?
 
A. 
Yes.
 
Q. 
Did he say why?
 
A. 
Yes.
 
Q. 
Why?
 
A. 
Because she was believed to be an informant and they had more than just her 
writing names down.
 
Q. 
Okay.  Did -- did -- did he indicate, or did he say to you, who is was that 
had to be gotten rid of?  Do you know that?
 
A. 
Yes.
 
Q. 
Okay.  Who did he tell you had to be gotten rid of?
 
A. 
I didn't -- all I knew her first name at the time was Gina.
 
Q. 
Okay.  That is all he told you, Gina?
 
A. 
Yes. [Emphasis added.]
 
 
        As 
the record demonstrates, Cantrell objected to the above testimony during the 
trial based solely on hearsay.  On appeal, however, he contends that the 
admission of the testimony from both witnesses denied him his right of 
confrontation.  Thus, Cantrell's complaint on appeal does not comport with 
his objection at trial, so any alleged error is forfeited.  See 
Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (stating 
that complaint made on appeal must comport with complaint made in trial court, 
or error is forfeited).  We overrule Cantrell's first four points.
IV. No Lesser 
Included Offense Instruction Was Required
        In 
his fifth point, Cantrell argues that the trial court abused its discretion by 
refusing to include an instruction on the lesser included offense of aggravated 
kidnapping in its charge to the jury and that this refusal constituted 
reversible error.  Specifically, Cantrell argues that he only planned and 
participated in the kidnapping of Gina and that Miller was responsible for 
Gina’s murder.  The State responds that Cantrell was not entitled to 
submission of aggravated kidnapping as a lesser included offense because the 
jury was charged on the law of parties.
        To 
determine whether a jury must be charged on a lesser included offense, we apply 
a two-step analysis.  Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. 
App. 1998).  The first step is to decide whether the offense is a 
"lesser included offense" as defined in article 37.09 of the code of 
criminal procedure.  Tex. Code Crim. 
Proc. Ann. art. 37.09 (Vernon 1981); Moore, 969 S.W.2d at 8.
        The 
second step requires an evaluation of the evidence to determine whether there is 
some evidence that would permit a rational jury to find that the defendant is 
guilty only of the lesser offense, and not of the greater.  Feldman v. 
State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); Moore, 969 S.W.2d 
at 8.  The evidence must be evaluated in the context of the entire 
record.  Moore, 969 S.W.2d at 8.  There must be some evidence 
from which a rational jury could acquit the defendant of the greater offense 
while convicting him of the lesser included offense.  Id.  The 
court may not consider whether the evidence is credible, controverted, or in 
conflict with other evidence.  Id.  If there is evidence from 
any source that negates or refutes the element establishing the greater offense, 
or if the evidence is so weak that it is subject to more than one reasonable 
inference regarding the aggravating element, the jury should be charged on the 
lesser included offense.  See Schweinle v. State, 915 S.W.2d 17, 19 
(Tex. Crim. App. 1996); Saunders v. State, 840 S.W.2d 390, 391-92 (Tex. 
Crim. App. 1992).
        The 
State does not dispute that aggravated kidnapping is a lesser included offense 
of capital murder as it was charged in the indictment in this case.  Thus, 
the only issue is whether there is some evidence that would permit a rational 
jury to find that Cantrell is guilty only of the lesser offense and not of the 
greater.
        The 
testimony at trial revealed that Cantrell told at least two people that he 
killed Gina because she was a snitch.  He told one of those individuals 
that Miller actually killed Gina to prove his loyalty to Cantrell.  Cropp, 
one of the participants in the kidnapping and murder, testified that Cantrell 
started inciting Miller and her about Gina a couple of days before the murder; 
Cantrell told them that he caught Gina taking phone numbers from his daily 
planner and wanted her killed because he thought that she was going to turn him 
in to the authorities for dealing drugs.  On the day of the murder, Cropp 
testified that they all made a plan to have Miller meet Gina at a convenience 
store.  Cropp further testified that she and Cantrell parked across the 
street from the convenience store where Gina met Miller and that Miller 
immediately came across the street after Gina arrived.  Cantrell and Cropp 
tied up Gina with duct tape and put her in the trunk.  They drove around 
town in two cars before meeting up again at the convenience store where everyone 
got into Miller's car.  Cantrell was the one who gave the directions to the 
cemetery.  Once at the cemetery, Cropp took Gina out of the trunk, and they 
all dragged her into the cemetery.  Cantrell stood with the gun pointed at 
Gina's head, but he did not pull the trigger.  Miller eventually took the 
gun from Cantrell and shot Gina.
        Here, 
the jury charge included the following paragraphs:
  
Now, if you find from the evidence beyond a reasonable doubt that the Defendant, 
Kirk Alan Cantrell, in the County of Tarrant and State of Texas, on or about the 
21st day of July, 1996, did then and there intentionally cause the death of an 
individual, Gina Dykman, by shooting Gina Dykman with a firearem, and the said 
Defendant was then and there in the course of committing or attempting to commit 
the offense of Kidnapping of Gina Dykman, or that the Defendant, Kirk Alan 
Cantrell, acting with the intent to promote or assist the commission of the 
offense of Capital Murder, if any, solicited, encouraged, directed, aided, or 
attempted to aid Daniel Miller and Beverly Cropp in the commission of the 
offense of Capital Murder, if any, or that the Defendant, Kirk Alan Cantrell, 
Daniel Miller[,] and Beverly Cropp agreed to kidnap Gina Dykman, and that Daniel 
Miller did then and there intentionally cause the death of Gina Dykman, by 
shooting her with a firearm, in the course of committing or attempting to commit 
the offense of kidnapping of Gina Dykman, and that the shooting of Gina Dykman 
by Daniel Miller, if there was such, was done in furtherance of the conspiracy 
to kidnap Gina Dykman, if any, and was an offense that should have been 
anticipated as a result of carrying out the conspiracy, then you will find the 
Defendant, Kirk Alan Cantrell, guilty of the offense of Capital Murder as 
charged in the Indictment.
  
Unless 
you so find from the evidence beyond a reasonable doubt, or if you have a 
reasonable doubt thereof, then you will acquit the Defendant of the offense of 
Capital Murder and say by your verdict "Not Guilty[."]
  
 
        For 
Cantrell to be entitled to the lesser included charge of aggravated kidnapping, 
some evidence must exist that would permit a rational jury to find that Cantrell 
committed only the offense of aggravated kidnapping.  No such evidence 
exists; instead, the only evidence shows that Cantrell's plan from the beginning 
included killing Gina.  Cantrell's argument—that Miller's infliction of 
the mortal wounds exonerated Cantrell—ignores the law of parties.  See 
Tex. Penal Code Ann. §§ 7.01-.02 
(Vernon 2003) (allowing the State to enlarge a person's criminal responsibility 
to acts in which he may not be the primary actor if certain criteria are 
met).  We hold that the record does not reflect the existence of evidence 
that would permit a rational jury to find that Cantrell is guilty only of the 
lesser offense and not of the greater.  See Moore, 969 S.W.2d at 
8.  Accordingly, the trial court did not err by denying the requested 
charge on the lesser included offense of aggravated kidnapping.  We 
overrule Cantrell's fifth point.
V. Conclusion
        Having 
overruled Cantrell's five points, we affirm the trial court's judgment.
   
  
                                                          PER 
CURIAM
 
 
  
PANEL 
F:   WALKER, HOLMAN, and GARDNER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
June 30, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.